STOKES *v.* STATE.

(Division B.   Feb. 11, 1935.   Suggestion of Error Overruled March 11, 1935.)

[159 So. 294.   No. 31588.]

G. Wood Magee, of Monticello, and Martin & Berry, of Prentiss, for appellant.

W. D. Conn, Jr., Assistant Attorney-General, for the state.

Briefs of counsel not found.

Argued orally by G. Wood Magee, for appellant.

Ethridge, P. J., delivered the opinion of the court.

The appellant was indicted, in the circuit court of Jefferson Davis county, for the murder of one Dale Cliburn, tried and convicted, and sentenced to serve a life term in the state penitentiary, from which judgment he appeals.

The first ground relied upon for a reversal is that the court overruled the appellant's motion for a continuance on account of the illness of his wife, said motion alleging that his wife had recently been operated upon in the hospital at Columbia, and had not recovered sufficiently to wait on and take care of herself, and that, by reason of such illness, his wife was unable to attend the trial, and that he desired her presence at said trial. There was no testimony offered on the motion, and no physician's certificate as to the nature and character of her illness, and whether it was serious enough to divert the appellant's attention from matters concerning the trial.

There was no motion for a new trial on this ground, and no evidence was offered to show any prejudice resulting either to the appellant or his wife by reason of the overruling of the motion.

This case had been previously continued from term to term, from August, 1930, to January, 1934. The trial judge has a large discretion to refuse or grant a continuance, and we see no reason to disturb his ruling in the present case. It is true that, in cases where the wife of a defendant is ill to the extent that her life is in danger, the court would and should, ordinarily grant a continuance, but much would depend upon the character and nature of the evidence, and the circumstances, including a history of the case.

It is also argued that the evidence is insufficient to sustain a conviction, and that the appellant should have been granted a peremptory instruction. The circumstances of the killing are, substantially, as follows: The deceased, Dale Cliburn, and his brother were in Short's hot dog stand, or restaurant. When Stokes came into the restaurant, he asked the brother of the deceased his name, and he replied that he had not been named yet. He then asked the deceased his name, and he replied that he had not been named, but that he was a brother of the first one addressed. The testimony differs then as to what happened. According to the state's evidence, Willie Cliburn, the brother of the deceased, the appellant began to curse, stating that he did not give a damn what their names were; that the witness arose, and Short, the keeper of the restaurant, jumped up on the counter armed with an automobile pump, and told all of them to get out of the restaurant, and told his wife to "call the law," and they went out to where their car was parked; the appellant followed them and assaulted the witness, and one Luper, who was jointly indicted with the appellant, struck him from the rear, and appellant stabbed him in the head with a knife, and he did not know what happened subsequently; that he and his brother were not drunk, and were unarmed. This witness testified that Dale Cliburn was stabbed in the head and never was

conscious, and never made any statement. A physician was called and attended them, and some witness testified that Willie Cliburn and the deceased, Dale Cliburn, were, in his opinion, drunk.

The father of the Cliburns stated that neither of his sons owned any weapons. The wife of the restaurant keeper testified, her recollection, apparently, not being very clear, but her testimony was corroborated by Willie Cliburn, as to what happened in the restaurant, and also that, after the fight, she requested a man to go to the scene thereof and see if there were any weapons, and that this man reported that he did not see anything except a pair of knucks, which he threw away.

Luper, who was present, and was jointly indicted with Stokes, testified that when Stokes, the appellant, came into the restaurant, he asked Willie Cliburn what his name was, and he told the appellant he had not been named, and appellant then asked Dale Cliburn his name, and he stated he was a brother of Willie Cliburn, and the appellant then stated it looked like their mother would think enough of them to name them, and that Willie Cliburn thereupon jumped up and began to curse, and Stokes and Luper went down the street fifty or sixty feet, after the restaurant keeper, Short, had jumped on the counter armed with an automobile pump, and that Willie and Dale Cliburn followed them. Luper further testified that Willie and Dale Cliburn came to where Stokes was, and that he could see motions like blows were being struck and that he saw the Cliburns fall; that he (Luper) was then thirty-five or thirty feet from Stokes (they having separated after they left the restaurant together), but that he took no part in the difficulty. His testimony was corroborated by another witness who was with him in the restaurant when Stokes came in. Luper also testified that a pistol and a pair of knucks were found at the scene of the fight.

The marshal, after arresting Stokes, returned to the scene of the fight and testified that he found the pistol and knucks there, and also found a bottle of liquor nearly consumed in the car of the Cliburns.

Alton Stokes testified that he entered the restaurant to get some supper, and asked Luper and his companion to have supper with him, and they replied they had eaten supper, and he then turned to the Cliburns, whom he did not know, saying, "I don't believe I know you boys, what's your name," and that Willie Cliburn said, "We haven't been named yet,"· and the other one, Dale Cliburn, answered that he had not been named either, but that he was Willie's brother, and that the appellant (Stokes) then replied, "I thought your mother would have thought enough of you to have named you," and that Willie Cliburn then jumped up and began to curse, and the restaurant keeper directed his wife to "call the law," and jumped on the counter armed with an automobile pump, and called to all of them to get out. Stokes said that he would and went out, and that he was followed by the Cliburns, and that Willie Cliburn had knucks, and Dale Cliburn had a pistol, and that Dale told Willie to "beat his brains out, and if you make an attempt to hit him I will kill you," and that he (Stokes) knew if he resisted that Dale would have shot him, and that he tried to cut them with his knife, and that Dale fell, and Stokes was arrested and carried to jail.

There was dispute in the testimony as to where the Cliburn car was located. According to Willie Cliburn, the car was near the scene of the difficulty, and they were going there, or in that direction, for the purpose of getting their car. According to Luper and other witnesses, the Cliburn car was located at another point, and that they were not going in the direction of the car when the difficulty occurred, but were following Stokes. There is considerable collateral testimony not material to the fight.

We have carefully read all the evidence, and we think the question was properly submitted to the jury. The jury have a better opportunity to know the character and observe the demeanor of the witnesses testifying before them. They see their appearance and can judge of their candor and tendency to testify fairly.

The case was here once before on a writ of habeas corpus, and there was a trial resulting in a mistrial. The trial judge submitted the case to a jury for a hearing on the merits, and held a separate trial on the question of bail, and bail was denied, and that was affirmed by this court.

Questions of fact are peculiarly questions for the jury, and it is only where there is no testimony that would warrant a jury, if the witness was believed, in finding a verdict, that the court can take the case from the jury.

The appellant complains of a reversed instruction reading as follows: ''The court instructs the jury for the defendant that the only reason why convictions or pleas of guilty to prior offences are allowed to be introduced in evidence against the defendant is to discredit him as a witness in his own behalf in this case, and not to show that he ought or should be convicted in this case, for no man should be convicted in one case, no matter what the offence may be, simply because he has pleaded guilty or has been convicted, of former alleged offences in some court. And the jury are instructed for the defendant that the introduction in evidence of pleas of guilty in former cases or on former occasions, when admitted by the defendant, does not even serve to discredit the defendant's testimony in the present trial.''

It is urged by counsel that, as the defendant admitted the convictions, the offenses proven failed of their purpose, that their only purpose was to affect his credibility, and that, inasmuch as the appellant admitted the offenses, there was no reason, arising from former con-

victions, for affecting his credibility. The concluding part of the instruction, ''And the jury are instructed for the defendant that the introduction in evidence of pleas of guilty in former cases or on former occasions, when admitted by the defendant, does not even serve to discredit the defendant's testimony in the present trial,'' warranted the court in refusing the instruction. The first part of the instruction seems to be all right. The introduction of the conviction of other offenses is authorized by statute, and it is not limited to the contradiction of the veracity of the witness, or the impeachment of his veracity, but may also show his disposition, and his disregard for law and order. It is true that this goes to the credibility of a witness, but it is not merely the truth of the convictions which are concerned, but the fact that he has been convicted, either by plea of guilty or a trial by the court, does not affect the admissibility of his evidence. The person may be a truthful one, and at the same time have a disregard for the law, and a jury may consider the fact that he has violated the law in determining just what weight to give to his testimony. The statute expressly authorizes the admission in evidence of former convictions, and does not limit it to discrediting witnesses as to their veracity alone.

We find no reversible error in this case, and the judgment of the court below will be affirmed.

Affirmed.